UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN VASHAUN MCKINLEY,<br><br>            Plaintiff,<br><br>    v.<br><br>STANISH,<br><br>            Defendant. | CIVIL ACTION NO. 3:21-CV-00960<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Presently before the Court is a motion to dismiss the amended complaint filed by Defendant Doctor Stanish ("Dr. Stanish"). (Doc. 23). *Pro se* Plaintiff Kevin Vashaun McKinley ("McKinley"), an inmate incarnated at the State Correctional Institution in Frackville, Pennsylvania ("SCI-Frackville"), initiated this action by filing a complaint in the United States District Court for the Eastern District of Pennsylvania on May 27, 2021, against Dr. Stanish based on treatment allegedly provided by Dr. Stanish at SCI-Frackville. (Doc. 2; Doc. 11). On May 27, 2021, the action was transferred to the Middle District. (Doc. 5). On May 16, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 22). For the following reasons, Dr. Stanish's motion to dismiss will be GRANTED.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On May 24, 2021, McKinley initiated the present action against Dr. Stanish by filing a complaint in the Eastern District of Pennsylvania for allegedly rendering medical care in violation of McKinley's Eighth Amendment rights. (Doc. 2). On May 27, 2021, the action was transferred to the Middle District. (Doc. 5). On June 28, 2021, McKinley filed an amended complaint and a motion to proceed *in forma pauperis*. (Doc. 9; Doc. 11). On August

13, 2020, after conducting its statutorily-mandated screening of the complaint in accordance with 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), the Court directed the clerk's office to serve the amended complaint and granted McKinley's motion for leave to proceed *in forma pauperis*, ordering McKinley to pay the full filing fee. (Doc. 13, at 1-2). McKinley paid the full filing fee in the total amount of $402.00 by filing three separate payments on September 13, 2022, October 8, 2021, and November 8, 2021.

On November 24, 2021, McKinley filed a request for entry of default and a motion for default judgment. (Doc. 15; Doc. 16). On March 21, 2022, the Court struck McKinley's motion for default judgment as premature because the Clerk of Court has not yet entered default in this matter and "[e]ntry of a default is a prerequisite to entry of a *default judgment* under Rule 55(b)." *Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D. Pa. 1985) (emphasis in original); *see also Enigwe v. Gainey*, No. 10-684, 2012 WL 213510, at *2 (E.D. Pa. Jan. 23, 2012) ("[A] default judgment under Rule 55(b) must be preceded by entry of a *default* under Rule 55(a).") (emphasis in original). (Doc. 17, at 2). In addition, the Court noted that, as no proof of service has been docketed, the Court determined it is unclear if service has been made in accordance with the Federal Rules of Civil Procedure and directed the Clerk of Court to re-serve a copy of the amended complaint. (Doc. 17, at 2). On March 28, 2022, Dr. Stanish filed a waiver of service. (Doc. 20). On May 27, 2022, Dr. Stanish filed the motion to dismiss, as well as a brief in support. (Doc. 23; Doc. 24). On June 27, 2022, McKinley filed a brief in opposition. (Doc. 26).

In the amended complaint, McKinley alleges Dr. Stanish violated his Eighth Amendment rights by failing to provide medical treatment despite McKinley's complaints that he was experiencing severe abdominal pain, a bad chemical taste in his mouth, severe

headaches, nausea, dizziness, and vomiting. (Doc. 11, at 2). McKinley contends Dr. Stanish delayed proper treatment and failed to act with professional judgment, which promoted McKinley to request proper scans and testing through inmate requests slips submitted to SCI-Frackville staff. (Doc. 11, at 3-4). As a result, McKinley claims he "experienced heightened anxiety, fear, tightness in his chest, muscle pain, inability to sleep, inability to eat, inability to drink, and inability to work." (Doc. 11, at 16).

The motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 23; Doc. 24; Doc. 26).

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions . . .'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain

statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With these standards in mind, *pro se* documents must "be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, *pro se* plaintiffs are still subject to the base pleading requirements of Rule 8. *Rhett v. NJ State Superior Court*, 260 F. App'x 513 (3d Cir. 2008). If a complaint fails to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### III. DISCUSSION

Dr. Stanish moves to dismiss McKinley's complaint for two reasons. First, Dr. Stanish argues that the amended complaint fails to state a cause of action against him based on deliberate indifference to a serious medical need. (Doc. 24, at 8-11). Second, Dr. Stanish

contends McKinley failed to exhaust his administrative remedies against Dr. Stanish prior to initiating this civil action. (Doc. 24, at 11-12). In opposition, McKinley argues the amended complaint does state a claim against Dr. Stanish for delaying his serious medical need and violating his Eighth Amendment rights. (Doc. 26, at 1).

    A.  Exhaustion of Administrative Remedies

Dr. Stanish moves to dismiss the amended complaint on the grounds that McKinley failed to exhaust his administrative remedies. (Doc. 24, at 11-12). Dr. Stanish asserts McKinley did not file a grievance against him that went for final review, which is a precondition to filing a civil lawsuit. (Doc. 24, at 11). In opposition, McKinley argues exhaustion cannot be considered on a motion to dismiss and Dr. Stanish's affidavits and documents asserting that he did not exhaust are insufficient and/or inadmissible. (Doc. 26, at 11-12).

The Prisoner Litigation Reform Act ("PLRA") provides that " '[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Paladino v. Newsome*, 885 F.3d 203, 207 (3d Cir. 2018) (quoting 42 U.S.C. § 1997e(a)) (alteration in original). In other words, exhaustion of available administrative remedies is a prerequisite for McKinley bringing this suit under § 1983. *See Ross v. Blake*, 578 U.S. 632, 638 (2016) (explaining that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies") (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)); *Jones v. Bock*, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)).

The "stringent requirements" of the PLRA are designed to, among other things, "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits," *Downey v. Pennsylvania Dep't of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020) (citation and internal quotation marks omitted) (alterations added); *Jones*, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being ha[u]led into court").

This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Additionally, this exhaustion requirement mandates proper exhaustion, "meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" *Downey*, 968 F.3d at 305 (quoting *Woodford*, 548 U.S. at 88). And, the applicable "procedural rules are supplied by the individual prisons." *Downey*, 968 F.3d at 305 (citations omitted); *see Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . .").

As explained by the United States Court of Appeals for the Third Circuit, however, "administrative remedies must be available to the prisoner." *Downey*, 968 F.3d at 305 (citation omitted). Administrative remedies are deemed unavailable when they operate as a "dead end[,]" are "so opaque" that they become, "practically speaking, incapable of use," or when prison employees "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Downey*, 968 F.3d at 305 (citing *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)). Thus, "[j]ust as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey*, 968 F.3d at 305 (citation omitted); *see Jones*, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion" (alteration added)).

The DOC's Inmate Grievance System Policy is set forth in DC-ADM 804.[1] It contains the procedural rules that apply here to McKinley's lawsuit, and it sets forth a multi-tiered grievance system, pursuant to which: (1) a prisoner is required to submit a written grievance within fifteen (15) working days of the alleged incident to the Facility Grievance Coordinator for initial review; (2) the prisoner is then required to submit a written appeal within fifteen (15) working days of an adverse decision to the Facility Manager; and (3) finally, the prisoner is required to submit an appeal of an adverse decision within fifteen (15) workings days to the

---

[1] DC-ADM 804 is available on the DOC's website at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf. The current version was issued on April 27, 2015, and became effective on May 1, 2015.

Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *See* DC-ADM 804, Inmate Grievance System Procedures Manual, §§ 1-2.

Here, McKinley filed Grievance No. 924343 in connection to the underlying events of this action. (Doc. 11, at 13). On May 12, 2021, the Initial Review Response denied Grievance No. 924343, finding that the allegations in the grievance were without merit because there was no evidence of Dr. Stanish denying and/or delaying McKinley's medical care and treatment. (Doc. 11, at 14). In support of his failure-to-exhaust argument, Dr. Stanish has submitted a declaration by SOIGA Administrative Officer Keri Moore. (Doc. 24-2). Moore states that based upon her review of SOIGA records regarding all the grievances filed by McKinley from 2014 to the present and their dispositions, McKinley has never filed a grievance concerning medical care or a grievance against Dr. Stanish that went to final review. (Doc. 24-2, at 2-4). Specifically, Moore states that McKinley never appealed Grievance No. 924343 to final review with the SOIGA. (Doc. 24-2, at 2).

Based upon an application of the well-settled administrative exhaustion standards and the declaration by Moore, it does not appear that McKinley appealed his initial grievance denial of Grievance No. 924343 to the Facility Manager or sought final review with the SOIGA. (Doc. 24-2, at 1-4). However, failure to exhaust administrative remedies is an affirmative defense rather than a pleading requirement, and necessarily will require a factual determination that goes beyond the complaint. *See Paladino*, 885 F.3d at 211. Therefore, the Court cannot grant a Rule 12(b)(6) motion on this basis. "Rather, we are required to 'notify the parties that' the court 'will consider exhaustion in its role as a fact finder under *Small[ v. Camden County*, 728 F.3d 265 (3d Cir. 2013)]' and provide [McKinley] an 'opportunity to respond.'" *Terantino v. Fortson,* No. 1:21-CV-1248, 2022 WL 1444448, at *5 (M.D. Pa. May

6, 2022) (quoting *Paladino,* 885 F.3d at 211). Dr. Stanish, accordingly, may renew his administrative exhaustion challenge via a motion for summary judgment under Federal Rule of Civil Procedure 56. Should Dr. Stanish do so, McKinley will be on notice that this Court will consider exhaustion in its role as a fact finder under *Small* and he will be given an opportunity to respond through the summary judgment briefing process. *See Terantino,* 2022 WL 1444448, at *5.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Need

Next, Dr. Stanish moved to dismiss the amended complaint on the grounds that McKinley's allegations that his conduct constitutes deliberate indifference to his serious medical need fails to state an Eighth Amendment claim. (Doc. 24, at 8-11). Specifically, Dr. Stanish argues that his actions are "just the opposite of deliberate indifference" because he "repeated[ly] tested McKinley to find a solution to McKinleys' abdominal pain, bad taste in his mouth and neck lump," and sent McKinley to the hospital when it was necessary. (Doc. 24, at 10). In addition, Dr. Stanish avers McKinley's medical care is currently being handled by Peter J. Baddick, DO ("Dr. Baddick"), who has made the same conclusions as Dr. Stanish regarding the benign nature of McKinley's neck lump, and argues McKinley's other complaints have also been addressed. (Doc. 24, at 11). In response, McKinley argues the fact he is now receiving adequate medical care is immaterial to whether he stated a claim against Dr. Stanish for delaying his serious medical need. (Doc. 26, at 1). McKinley claims Dr. Stanish did not exercise professional judgment and was fully aware of McKinley's serious medical need, but did nothing about it. (Doc. 26, at 5-6).

McKinley asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. (Doc. 11). Section 1983 provides a private cause of action for violations of federal constitutional rights.

The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

To sustain a claim under the Eighth Amendment for medical deliberate indifference against Dr. Stanish, McKinley must plead facts that:

> [M]eet two requirements: (1) "the deprivation alleged must be objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations marks and citations omitted). In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" is a subjective standard under Farmer—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle*, 429 U.S. at 105. To establish a violation of his constitutional right to adequate medical care in a prison setting, Brown is required to point to evidence that

demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or even negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, No. 99-CV-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." *See e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278

(3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.'); *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. *See e.g., Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't of Corrections*, 230 F. App'x 195 (3d. Cir. 2007); *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006); *Bronson v. White*, No. 05-CV-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); *Gindraw*, 967 F. Supp. 833. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his ... care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

*James*, 230 F. App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such

determinations remain a question of sound professional medical judgment. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw*, 967 F. Supp. at 836 (citations omitted).

Here, the Court finds that the allegations in the amended complaint clearly demonstrate that McKinley had received medical attention for his neck lump, severe abdominal pain, bad chemical taste in his mouth, severe headaches, nausea, dizziness, and vomiting. (Doc. 11, at 1-16). McKinley alleges Dr. Stanish delayed proper treatment and failed to act with professional judgment despite McKinley's complaints. (Doc. 11, at 3-4). As a result, McKinley claims he "experienced heightened anxiety, fear, tightness in his chest, muscle pain, inability to sleep, inability to eat, inability to drink, and inability to work." (Doc. 11, at 16). However, the allegations in the amended complaint reflect that Dr. Stanish repeatedly requested EKG scans and x-rays, ordered blood tests, conducted physical examinations and a "swallow study", proscribed antibiotics and other medications, and sent McKinley to the hospital when it was necessary. (Doc. 11, at 2-8). Unfortunately, despite the medical attention, Dr. Stanish was not able to determine the cause of the neck lump and decided to continue monitoring McKinley's condition. (Doc. 11, at 12). However, the amended complaint submits the hospital could not determine what the lump was either and duly suggested continuous monitoring to ensure McKinley's condition did not worsen. (Doc. 11, at 15).

Upon review of the record, the Court finds the attention McKinley received lacks the requisite deliberate indifference to support an Eighth Amendment claim. It is clear from the allegations of the amended complaint that McKinley has been provided consistent medical care for his medical needs and simply disagrees with the method of treatment Dr. Stanish employed and the determination that the cause of his neck lump is unknown. "At most, [McKinley]'s allegations amount to medical malpractice; they are insufficient to establish a constitutional violation." *Warren v. PrimeCare Medical, Inc.*, No. 20-3561, 2022 WL 4244273, at *2 (3d Cir. Sept. 15, 2022); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Court must defer to the judgment and expertise of medical providers, as the mere disagreement as to the proper medical treatment does not support a claim of violation of the Eighth Amendment. *See Gindraw*, 967 F. Supp. at 836. Accordingly, McKinley's Eighth Amendment claims are dismissed.

C. L<span>EAVE TO</span> A<span>MEND</span>

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 108; *Shane v. Fauver,* 213 F.3d 113, 116-17 (3d Cir. 2000). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *see also Ruffin v. Mooney*, No. 3:16-CV-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under § 1983 or a habeas statute). A district court is justified in denying leave to amend if amendment would be "inequitable or futile" or upon

"[a] plaintiff's 'repeated failure to cure deficiencies by amendments previously allowed . . . .'" *Kitko v. Young*, 575 F. App'x 21, 27 (3d Cir. 2014) (quoting *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 217 (3d Cir. 2013); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)).

Because it is conceivable that McKinley may be able to cure his pleading deficiencies, the Court will permit him to file an amended complaint – in accordance with this Memorandum – in the event that he can aver facts that would plausibly state an Eighth Amendment violation. The amended complaint must be a single, unified, legible complaint setting forth factual allegations and legal claims in a manner that can be reviewed by the Court and, if necessary, answered by Dr. Stanish. The amended complaint must be a pleading that **stands by itself without reference to the original complaint**. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (emphasis added). Further, the amended complaint must be "simple, concise, and direct" as required by Rule 8(d)(1) of the Federal Rules of Civil Procedure. It must also be limited to those claims that arise out of the same transaction or occurrence or series of transactions or occurrences. **Failure to file an amended complaint in accordance with the aforementioned requirements may result in the dismissal of this action in its entirety.**

IV. **CONCLUSION**

For the foregoing reasons, Dr. Stanish's motion to dismiss is **GRANTED**. (Doc. 23). An appropriate Order follows.

                                      **BY THE COURT:**

Dated: September 21, 2022                *s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **Chief United States Magistrate Judge**